Frasier. I'd like to reserve five minutes for rebuttal. The pervading issue in this case is obviously the mental retardation or the Atkins v. Virginia issue. The question is, in spite of the expert opinions in state court at the trial, is there sufficient evidence in the record that they should have recognized that Mr. Frasier was mentally retarded? In this matter, the defense originally moved that he be disqualified for the death penalty because of mental retardation. They did not have an expert at that time. They sent him to the court psychiatric clinic in Lucas County. The doctor for the psychiatric clinic did testing and found he had a full performance of 75 and therefore he wasn't mentally retarded. He also based that on his view that when he came in, Mr. Frasier was well-groomed and was able to take public transportation and spent about a paragraph on adaptive skills and that was it. The defense then went out and obtained its own expert who was a neuropsychologist. This was Dr. Smalden. Dr. Smalden, who did not have a background in mental retardation, reviewed the testing and determined that Mr. Frasier had a 72 full performance IQ. However, he did not recognize the SEM, the standard error measurement. Also, there was no consideration of the Flynn effect, which is not an issue here. Nobody has brought up the Flynn effect, but the fact that Mr. Frasier was older in age clearly would indicate that the IQs would be, if anything, accurate or less. In this matter, the defense, inexplicably based on what Dr. Smalden had told them, withdrew their application to have Mr. Frasier disqualified. What would you say the error was from an ineffective assistance perspective? Was the error in not seeking a third expert? No, the error was that not recognizing from the evidence before them that in spite of Dr. Smalden, that the evidence for mental retardation was there. And they should have spoken to Dr. Smalden about it, particularly because that wasn't his reason. I mean, it was all there. You don't need to go... I guess I'm struggling with what you mean. I mean, you say they didn't have to go to a third expert. They could rely on the two they had in their reports. But the punchline in both reports is a punchline on which a state court would not have had authority to find mental retardation. I think they would have, based on the evidence. I don't think that the trier of fact is bound by what the expert indicated, particularly when the law is indicative that the MR is there. Now, should they have gone and asked for a third person? Certainly. I mean, excuse me, a third expert, certainly. Yeah, but was that ineffective assistance? Sure. Because they have a duty to go... The first time I asked this, you said no. I'm sorry. I apologize for that. No. The basis... Which is the answer? Okay. Well, there's two answers. First, there's enough in the record that it was MR that it could have established the MR without a third expert, but the safe thing to do would have been to go get a third expert. The lawyers are required to understand the mental retardation themselves. You have to learn it yourselves. You can't rely solely upon the expert. The problem here is everything needed to establish MR is in the direct appeal record. Well, what exactly shows that they were wrong to withdraw the MR defense? Well, first of all, as the court knows, the Ohio standard is set by state versus lot, which mirrors Atkins, which indicates there's three prongs. The IQ of 72 is not definitive. The United States Supreme Court just took Hall versus Florida on cert on that basis, on that issue. Do you think that... And I know I'm asking you another question without letting you answer the first one. Do you think that Hall versus Florida is a case that we should wait for resolution of before we resolve this case? I don't want to hedge, but I'm going to. It depends on... I think there's enough... Can I explain it this way? The Ohio Supreme Court, in its decision, it was raised on direct appeal by the state defenders on the basis there's enough in the record. The Ohio Supreme Court drew a bright line. They said it's IQ of 72. In what they said, they treated it almost like the old federal guidelines for sentencing. They said there's no basis here to go below that. Because there was a 72, that they did not need to consider anything else. It creates a presumption. 70 creates a presumption. That's right, but they didn't treat it as a presumption. The state Supreme Court did not treat it as a presumption. That's the problem here. Because there's no reason for them to... Is Hall a direct review or an AEDPA case? It's a direct review from a Florida statute. So how would it change things here, given AEDPA? If the Ohio Supreme Court basis for rejecting mental retardation finding was based on that there was a 72 and there was no reason to depart from it, then clearly they established a bright line IQ, which is what the plaintiffs in Hall are arguing. The Florida statute indicates it has to be below 70. Are you saying if I go back and read the Ohio Supreme Court decision, it says this case is over because of the score of 72? They specifically said there's a 72 IQ, and based on the two experts, there's no reason for us to go below that. The two experts, though, said more than 72. They said onset not before 18, other functioning qualities, living on his own. I mean, there's a lot of other stuff there. Well, there is, but I don't believe Dr. Forjak said anything about onset. He didn't address onset before 18. He also didn't address adaptive skills at all. The court psychiatric clinic physician. Dr. Smalden. You can go down the road. I'm just trying to make sure. I'm just trying to clarify your point that you were saying in response to the questions about Hall. Right. The reason Hall could make a difference here is the Ohio Supreme Court said 72 is enough to not have to worry about it. Essentially, yes. I'm pushing you on that. Okay. I'm a little skeptical that that's all they said. Well, because, and the reason I'm basing that, their direct quote was, not direct, but the paraphrasing, their direct quote is they indicated it's 72 and there's no reason for us to go below that. They did not consider the five-point SEM at all, period. Basically, and then there's a second paragraph where the Ohio Supreme Court indicated and besides, there was no adaptive skills that are relevant in the record. So they addressed that, but that was the and besides, which also is incorrect based on the record. So that to get back to the point, if I think this court does not need to wait for Hall, if it finds that the Ohio Supreme Court and, frankly, the appellate court, which found res judicata, but was incorrect in their finding that based on the record before them, that they didn't, excuse me, that the defendant didn't overcome the presumption based on the vast deficiencies that are in this record, which I would be happy to address. In Lott, the position is, and it's Atkins itself, they indicate it's 70 to 75. Atkins addresses 70 to 75. In Lott, they indicated if it's above 70, there's a rebuttable presumption that it can be overcome and it's overcome by both the DSM and the AAMR if there's deficiencies in a number of adaptive skill areas and the onset is pre-18. To start with the pre-18 first, it's clear that there's great evidence that there was mental deficiencies at that time. He flunked first grade. He had a problem with attendance. He dropped out of school in 10th grade. He had been put in special classes because of academic inability. He was 19 when he dropped out of school at the age of, or excuse me, in the 10th grade. So there really isn't a question he had these deficiencies beforehand. As Dr. Reinschild said in his affidavit that was in the post-conviction, that for, it's unusual. If you have a 72 at this point, it's pretty accurate because over time IQs tend to go up, not go down, unless there's other reasons, which wasn't apparent in this record. The deficiencies, the adaptive skills areas where there seemed to be the greatest disagreement. Dr. Forzak for the clinic didn't address it at all. Dr. Smalden unknowingly did address it. His preparation in his testimony, in his report that he gave to the court, I can address a number of the areas that came out. In the conceptual skills, he had poor spelling. He couldn't spell basic words. There were basic five-letter words that he couldn't spell. He had trouble with reading. He had trouble with math. When they gave him some of the testing, he was asked, when I say he, obviously I'm talking about Mr. Frazier, was asked to divide 16 by 4. He couldn't do it. Very basic math problems. Again, he failed the first grade. He was in a slow learner's class. He never went back and got his GED. He also, the background for the mitigation showed he had been a loner. He had essentially lived alone for 20 years. He had no real relationship with his siblings and his parents. He had no relationship with his peers. He reported to Dr. Smuldin, I don't think I've ever had a friend. He was unable to avoid victimization. He was living in a project, which is clear, the prostitution, the drug usage. He had been raped at a younger age, which had a profound effect on him. He had a drug habit. He wasn't able to sustain. It's unclear if he was divorced or had been living with somebody, but he had indicated he was married and couldn't sustain the marriage. All these are social adaptive skills. All these are clear in the record. Did you review the rape at his claim de novo? I believe so. In this case, the district court did not review it on the facts. The state appellate court did not have a merits decision. They found res judicata. Their belief was that it was raised on direct appeal, and therefore they couldn't consider Dr. Reinshult's affidavit where he went over this same evidence. The state appellate court was basically correct in saying, look, this is the same evidence that was on direct appeal. You're not bringing anything new here. And the Ohio Supreme Court on direct appeal reviewed only for plain error? That's correct. Only on a plain error standard. But, I mean, reviewing the Atkins claim de novo assumes you get through the procedural default. Well, yes, and the procedural default, clearly their ineffective assistance of counsel for withdrawing this when the record was before it. It was picked up, and it was obvious on direct appeal, and a direct appeal lawyer did do it. Plus, ineffective was raised on direct appeal. It was raised in post-conviction. What's the best argument for ineffective assistance? You know, the best case where, you know, because part of this you have to agree they did the right thing. You know, they're getting experts to look at this. Correct. So they're starting down the road. And I take it your claim is, well, you can have such bad expert opinions that it's not fair, and it's not, it violates the Sixth Amendment to stop searching just because you get two conclusions that your client's not mentally retarded. But what are the best cases for that way of thinking about your theory? It's this. That, first of all, Dr. Forjak's opinion was literally apparent. I'm looking for cases because what seems to be the best cases. Go ahead. Richie. You know, in Richie, in the ABA guidelines, that Richie Discord indicated that defense counsel has a duty to understand the science to an extent that they know when they're interviewing experts, if their expert has a background or qualifications for the area they need it for. In this case, the material. So I know Richie, I remember it generally, but what I don't remember about it is you're saying that was a case where you had two experts? No. I'm thinking of a case where you, I'm really looking for an Atkins type case where someone, okay, says this is close, it's borderline, it's worth an investigation, you hire your two experts, they give you the wrong conclusion, and it's ineffective assistance at that point to drop the claim. That's the case I'm looking for. I do not know a specific Atkins case where that's what happened. And the next closest would be Richie. Well, because the general, yes, but the general principle is that you have the duty to know the science, be it mental retardation, DNA, or whatever it is, that as a lawyer, as a defense lawyer, you must understand that science to the extent that you're putting on and you know what you're looking for. And in this case, it was all there. That's the frustration. All the evidence backing up, which is why we raise the actual innocence of the death penalty, it's all there. So that in this case, the procedural fault, let me try this again, default issue, it was raised as ineffective on direct appeal. It was raised as plain error on direct appeal. It was raised again on the post-conviction. Ohio has a very quirky situation where if you raise something on direct appeal, there actually is a case which is cited, which is State v. Norman Smith, where the Ohio Supreme Court has set a standard, if you raise something on direct appeal, but it's clear it can't be fully developed without going outside the record, then they've indicated that you do need to go to post-conviction. The court basically, on a case raised on direct appeal, ordered it to go to post-conviction where it was, and Norman Smith ultimately prevailed on a post-conviction. So that the finding of the appellate court in this case, in finding that it was breast geotocata is just simply incorrect, based on Ohio law. It's just incorrect. Wasn't there a state court that said this was a strategic decision by the defense lawyers? Which court was it, and why aren't we bound by that? The appellate court. On post-conviction? On post-conviction. And we're not bound by it for the same reason that the Supreme Court has indicated, and this court's followed, that you have, it has to be fully investigated, and it has to be a knowledgeable decision. Strategically, there was no advantage to withdrawing this request. There was no basis for giving up the Adkins at all. Again, you're not bound. Ohio law isn't that. If you have an expert, even if you disagree with your expert, you can make the case to the judge, and you can. If you know that the burden is going to be upon you under Ohio law, and you know that you have no expert testimony to support your claim, why would it be ineffective per se to make that decision that you weren't going to go forward? We're not arguing it was per se. Obviously, there are some cases where it is a valid strategic decision, so it's not a per se issue. But in this case, it is because had the attorneys understood Adkins, understood Lott, understood the standards under both the DSM-IV, in this case, and the AMR guidelines, the evidence was right there before. Can I ask you something else back to what the Ohio Supreme Court said and the plain error review? Yes. I read the Ohio Supreme Court opinion to say, well, yeah, we think that plain error applies, but then they go on to find there's no error, plain or otherwise. What is the import of that? I mean, essentially, the standard of review does not matter under the analysis they conducted. Well, yes, I mean, I would argue that there was a full merits review in this case on that basis. Step one of plain error is whether there's error. Right. I understand. But they went ahead and followed the four-step test. How does that take you out of the procedural default world? Because in a situation where they've gone, well, okay, you know what, I'm going to concede that issue. Well, no, before you do, would not the position that step one of the plain error standard, which is is there error, means that there was a merits determination, mean that review for plain error is always a merits determination? And hasn't the U.S. Supreme Court distinguished between review for plain error and review on the merits? Well, I have to concede my ignorance on this one. Okay, so we need to look at whatever the relevant Supreme Court case is. It is. My understanding, plain error and even this Court's review of plain error in Ohio have been, frankly, very confusing. And it's difficult. In this case, our position is it doesn't matter because the evidence is, by clear and convincing, establishing of the MR in this case that the thing to just to think about on rebuttal, and I think you did the right thing when you're not sure to say you're not sure, but maybe just think about it on rebuttal if you can come up with a response to this point. The reason I just don't understand how if you have plain error and it's got these four parts, the first part is whether there's error. We do this all the time, and it's not unusual for us in the context of plain error review to say, well, there was just no error. If that means that it's a merits determination and you're no longer procedural default land, then the remedy is just ridiculously easy. All state courts would do from then on is they'd make it a macro in your computer program. It would say whenever you just say on step one that there was no error, you would then say, and necessarily any error if there was one was clearly not plain. And boom, there just wouldn't be any doubt that you were doing the plain error. So it just seems really odd to me to punish them for not going on and saying, well, and of course, since there's no error, we also necessarily conclude any error was not plain and necessarily conclude there was no substantial injustice. So that's what just seems puzzling to me about saying when the state court focuses on the first step and doesn't say anymore that that counts as, you know, outside procedural default and not following the procedural default rule. Anyway, that's my question. You don't have to answer it now. I'm just saying think about it, and I don't know if you have any other thoughts I'd be interested. Well, I do, and this is the problem with doing this kind of work that you see more than anybody does because when they give a mixed bag a lot, they'll say it's defaulted and then go on and do the full merits review. But by giving the merits review, I think it gives this court, reviewing courts, the opportunity to understand if their analysis of whether it was error was correct or not. When the court steps out, like in this case, and gives its reasoning why it's not error, if that reasoning is incorrect, is it still a plain error review? If we can look at this and see that their rationale, that their reason for saying it's not error is wrong, then must it still fall within the plain error auspices? And that's the problem that we have here, and that's the problem that we have often in these kind of cases. So obviously the better practice for the court would be if it's plain error, it's plain error not to review anything. But when you go out and provide your reasoning, and you go through the record, and you can establish that that reasoning based on the record is incorrect or not supported by the record, then why should it get the bar if that bar is based on incorrect analysis? And that's our position on that matter. Also, briefly, in a short time, I think that the other key issue, and this is on the ineffective outside of the MR or the Atkins situation, was the failure to get a drug expert for the mitigation. In this case, as this court has seen too often, the mitigation consisted of the expert, period. That the expert just resuscitating after having spoke to family members or what maybe perhaps the mitigation investigator said draws these blanket conclusions. And in this case, they found that the failure not to get a toxicologist or a drug expert was because it was mentioned, because Dr. Smalden mentioned in his testimony at the penalty phase that Mr. Frazier had a drug problem, that it's just cumulative and it doesn't matter. But it's much more than that. If you look at Dr. Smith's testimony, what he indicates and what is so important about that, he talks about the fact if you have a low intelligence, as clearly he did whether MR or not, he clearly was impaired cognitively with the drug habit, that it exacerbates both. That the decision making is impaired extremely. And Dr. Smalden didn't testify to that effect? As a matter of fact, he specifically said he was not an expert in drugs. He testified that he had drug usage, but he did not testify as to what effect the drugs would have because he's not an expert in that area. And in this case, why that is so important is because the record indicates that Mr. Frazier had used crack cocaine, I believe the night before and the night of. So that an expert explaining how your ability to make decisions, particularly in somebody impaired cognitively, would be exacerbated was of extreme importance and it just was never done. So the fact that you used drugs to a gerb, I believe, would have very little weight because how is it in any way mitigating that you use drugs? The fact that you became involved in drugs because of your background, because of your low intelligence, and how one started without education, you went on down and led to poor decision making on this night, may have significant weight to the jury. Is that particular issue one that we reviewed de novo or are we bound under AEDPA to a higher standard of review? I believe in this case it's an AEDPA review because, again, we have the same problem. The Ohio Supreme Court never addressed the issue. I think it's de novo, I'm sorry, I'm speaking out loud. The reason is because the appellate court found res judicata, so that this issue was never fully addressed. It wasn't addressed below, it wasn't addressed here, so it has never been addressed on the merits by any court. And, again, I believe the res judicata finding was faulty because on direct appeal, Just to make sure I'm getting something, we're not allowed to review res judicata findings of state courts on habeas. I don't think that's a state law decision, right? Well, if it doesn't meet the If you can show cause and prejudice, you can get around that, but you don't win a procedural default claim by saying the state law application of its procedural default rule violates state law. If it's not adequate and independent, you can. And in this case, I believe this court has found in a number of cases that Ohio's res judicata is not adequate and independent because it's not systematically and evenly applied. Okay, yeah, if they're not applying it, that's right, but that's different from saying they got it wrong. Well, yeah, I guess, I'm sorry, the fact that they got it wrong, the better way to have said it, that they're not evenly applying it. It's not adequately and independently applied because sometimes they use it, sometimes they don't, and in this case, they used it. It was contrary to Ohio Supreme Court standards for applying res judicata. But even under a Moppin analysis, it would fly because the prejudice, I think, is clear. I'm sorry, I'm out of time at this time. Thank you very much. Thank you. May it please the court. My name is Brenda Leakland. I represent the Appellate Warden in this case. This case, the mental retardation issue can be summarized in really one word, waiver. He waived this issue in the state court. He withdrew his Atkins petition, his motion, and the state courts agreed with that waiver, said that he waived it. He made a knowing and intelligent voluntary waiver. The trial court went through great pains to question the attorneys on two different occasions and questioned Mr. Frazier on the record as to whether he understood what he was waiving, what he was giving up. He indicated that he did. Then the Ohio Supreme Court… Maybe it's a waiver, maybe I'm misunderstanding it. Yes, Your Honor, but that came later. How do you apply res judicata to a waived claim? Your Honor, let me get there. He goes to the Ohio Supreme Court. The Ohio Supreme Court does a plain error analysis and an alternative merits review saying that there was no error. He then raises the same issue on post-conviction using evidence not outside the record, excuse me, evidence outside the record which was based on evidence that was in the trial court record. The post-conviction court said, it's res judicata because you raised this issue to this Ohio Supreme Court. The Ohio Supreme Court determined that you waived it and did alternative merits analysis already. We, therefore, don't have to do anything because of res judicata. However, the post-conviction court of appeals then did give an alternative merits review of the claim and again found that there was no error. Did you say waiver? Are you distinguishing waiver from forfeiture? No, Your Honor. He forfeited. He waived the issue. Are you distinguishing waiver from forfeiture? I thought that your point was that he actually withdrew his mental retardation defense which is different than forfeiting, isn't it? He withdrew his defense. At trial, I believe he forfeited that issue. Maybe the state courts didn't get this concept because if they're applying plain error review, you don't apply plain error review to waiver. Waiver is you just withdrew it and the only question would be whether you knew what you were doing and then maybe a question about ineffective assistance but you wouldn't get in. You don't have plain error review of waivers, I guess is what I'm saying. Typically, Your Honor, that's correct. However, I think the Ohio Supreme Court took that added step to analyze this on a plain error analysis to determine whether, and this is in particular to the ineffective assistance of counsel claim, as to whether it was plain error for the counsel to have withdrawn that and whether that was ineffective assistance of counsel. I believe that that is how they analyzed the plain error alternative merits review and the plain error is afforded a DEPA deference. It is an alternative merits review. In what case do you rely on for that principle that plain error constitutes a merits review for EDPA purposes? This court's decision in Scott v. Mitchell and also the United States Supreme Court Engle v. Isaac. Since this is an alternative merits review, then that is afforded a DEPA deference and therefore this is not a de novo review. You are bound by the state court record. You are bound by the state court findings. As to the procedural default issue, Frazier has come up with two different procedural default arguments. One that he raised at the district court and one that he raises here. At the district court for the procedural default, he claims that race judicata is not an adequate procedural bar. However, in his briefing when he comes to this court, he says that the claim overcomes procedural default by cause and prejudice under Maupin because of the ineffective assistance of trial counsel. That is a claim that he did not have at the district court and therefore it's not properly before this court. So what do you say about Judge Moore's question about Hall? About Hall, Hall does not apply in this case. There's no reason that we should hold this case or wait for the Hall decision. Suppose that Hall decides that there is a standard error of measurement or SEM or whatever that is five points. Why wouldn't that have a direct impact on this case? Well, it wouldn't have a direct impact for one important reason. Well, two important reasons. One, Hall is a direct review case and this is a depa deference case. This is a habeas case. So it's under different, but the second, and I believe the one that more specifically addresses your point about the five-point standard error of measure is Smaldin's testimony in mitigation. And it can be found at the Sixth Circuit Appendix, page 3535. Smaldin testified about the standard error of measure. He doesn't use the word standard error of measure. He uses a five-point wiggle room. And therefore, he's already put that in the record. That has already been made part of the record. What did he say about it? He said that IQ is not a set number, that there is a five-point wiggle room. And the other issue with standard error of measure, it doesn't just go in the downward direction. Of course, Mr. Fraser wants you to only take it in the downward direction. It's a five-point standard error of measure in both five points down and five points up. And if it goes five points up, he's even further away from the 70. And the 70 is not a bright-line rule. The 70 is a presumption. And that presumption could be overcome, but it's not in this case. Because in this case, he doesn't meet any of the requirements that would overcome that presumption. Does Hall involve a bright-line rule, or does it involve a similar procedural mechanism of the type Lott adopted? Your Honor, it's my understanding of the Hall case, and I believe it's out of Florida, that it does apply to a bright-line rule, that that is what that case is. That's my understanding of it. And that's different than what we have here. What we have here is 70 is a presumption, and the inmate at the trial court level would be the defendant, has the opportunity and the burden to overcome that presumption. And he cannot do that in this case. And recognizing that he could not do that, that his own expert says, can't do it because he doesn't meet the adaptives, we can't overcome that, he's not mentally retarded. That forms the basis with Smaldin's analysis, as well as the State's expert's analysis, gives the attorneys strategic reason to withdraw that motion. If you could explain for me, I honestly don't understand what the strategic reason for withdrawing the defense is. The strategic reason for withdrawing the defense is they can't make it. But why not? One expert said his IQ was 72. Why not try to convince the trial court, the jury? I guess it would be the trial court, because mental retardation is a question of law under Ohio law. Why not try to convince the trial court? Your Honor, because if he had tried that and was unsuccessful in that, because of his expert saying that he cannot meet that burden, we would be hearing an additional ineffective assistance of counsel claim that counsel was ineffective for even trying that strategy. Why would that hurt him to try before the trial judge to show that he's retarded and to fail at it? Why would that hurt him? Your Honor, because it may not necessarily hurt his trial, because they did raise the mental retardation at sentencing. However, it is a strategic decision. There has to be a reason that you can come up with or the Ohio Supreme Court can come up with or the Ohio Court of Appeals that somebody can come up with, somebody on this panel. I'm truly asking to find out. It's not out of meanness or anything. I don't understand why the counsel would withdraw it when it was a question before the judge, so it wasn't going to prejudice the jury in some way to think, oh, my gosh, this lawyer doesn't know what he's doing. It's almost like you're throwing a label strategic, but I don't see any reason. Your Honor, it would be the same analysis as for a suppression motion. There are some cases that a suppression motion is not wanted because it is non-meritorious. And as an attorney, you have a public discretion. But if his IQ were 100 and he had no adaptive problems and he wasn't ever diagnosed as mentally retarded, but here Social Security diagnosed him as retarded and paid him money. Social Security labeled him mentally retarded. We don't know what standards they use. Was there a motion that he was incompetent to stand trial? Yes, Your Honor, there was. What happened to that? Your Honor, he was analyzed, a report was done, and Dr. Forgak determined that he was competent. So what happened? Did the judge review that? Yes, Your Honor. The judge determined he was competent? Yes, Your Honor. And there was no appeal made about the competency ruling? No, Your Honor. So that's the same situation, not continuing with an argument that you started with. Well, Your Honor, the competency argument or the competency ruling is once the report came in, both the defense attorney and the prosecutor agreed with the report coming in as a court exhibit. It was done just as basically a two-minute thing. We sent him off for competency. Dr. Forgak's report says he's competent. Anybody have any objection to this? And both attorneys said no. And so therefore, it wasn't necessarily that they continued on with trying to prove that he was incompetent. They conceded that he was competent based on that report. I'm trying to draw an analogy to that decision and the decision about mental retardation. Yes. Do you see how they're similar or not? Yes, Your Honor, I do. And I think that they're both strategic decisions and both battles that weren't worth fighting in this case. I think strategic is the wrong word. Because strategic suggests that usually to most people, strategic suggests, well, if I do this, it's going to create tension with something else I'm doing in the trial. I think Judge Moore is probably right.  with something else you're doing in the trial. Maybe my term of strategic is not a good term to use. But this was a reasonable decision of the trial counsel to withdraw the mental retardation motion based upon what their expert said and what the state expert said. And it was a reasonable decision. And the courts who looked at this and in their alternative merits analysis that's afforded a depth of deference found that it was a reasonable decision. The district court reviewed this claim de novo, am I right? Your Honor, I believe that the district court reviewed it, said it was defaulted, and did, again, an alternative merits. I do not believe it was a de novo review. Well, what standard do you think the district court applied when it was reviewing the merits? It did an alternative merits analysis of the claim and recognized that it was a depth of deference. You think the district court reviewed the Adkins claim applying the unreasonableness standard? Yes, Your Honor. Is there a particular place you would take us in the opinion? Your Honor, if you'll give me just a moment. I don't want you to waste your time. We can look at it if it's hard for you to find. I could, if given just a second. Well, at page 41, this is a transition, so it only has an implication. But at page 41, it says, even if Fraser's Adkins claim were right for review, it lacks merit. Right. Something happened before then. I believe that that quote there on page 41 is approximately where I was going, is that it was an alternative merits. You can't raise it because it's barred, but then they went and did an alternative merits. It's without merit. That suggests two rulings below, not one that's an ad pa deference ruling, but one that says procedurally barred, end of story, and second, even if it were up here on the merits, it loses de novo. It wasn't that it was de novo. It was a deference that the state courts were not unreasonable in finding that there was no merit. Okay. Okay. You're the expert. This can be checked out later on. I don't want to divert you from what you want to say. I could look up for that page number exactly for you and provide that to the court. Moving on to the ineffective assistance of counsel, the counsel was not ineffective for withdrawing the Atkins lot motion. It also was not ineffective for not bringing in additional experts. First of all, the Supreme Court has never said you have to keep shopping around for experts, and Mr. Fraser's constant reliance on the ABA guidelines belies the point that the United States Supreme Court has said the guidelines are well and good, but they are not the force of law. The Supreme Court in Van Hook said that. And so while the guidelines may say that they should keep shopping around, the Supreme Court has never held that you have to keep shopping around for an expert to say what you want him to say. As for the expert for the drug usage... Can I just take you back? I'm sorry. I'm only asking this because you've been answering our questions well, so it's a compliment. But I'm actually thinking Judge Moore may be right about this point. Yeah, page 41. Lower at the bottom of 41, it says, you know, get into this plain air thing, but then the point is thus the deference due under the EDPA does not apply, and this court will conduct an overview of the claim. So the thing I guess I want to make sure I'm understanding, because I think it partly is a response to Judge Gibbons' question, this goes back to Hall again. So if we're talking about looking at the Atkins claim de novo, and if I were getting your answer to Judge Gibbons, and I'm not totally sure I was, was you were saying, well, listen, what was going on in Hall, which is Florida, was this rule that if you're over 70, you're automatically not entitled to Atkins? What exactly was the automatic rule you? I'm not sure what number they picked. Okay, but they picked a number. They picked a number. And they said if you're over, that's the end of it, and no other inquiry? That's my understanding of Florida law, although I am not that person. But that's your reason for thinking, even if we applied de novo of the Atkins claim, Hall wouldn't bear in this case because law is not a bright-line rule. That's correct, Your Honor. Okay, so I did understand it. It is a presumption rule under lot. It is not a bright-line rule. Okay, I get it. Thank you. Yeah, and I think that this page 41 is the key page in terms of what standard the district court applied, not to say that we can't decide differently, but I think the district court did apply de novo review and said that ADPA does not apply. I'm sorry, Your Honor, if I gave an incorrect answer to that. I wouldn't have brought it up if I didn't think you could deal with it. It's a compliment. Thank you, Your Honor. And lastly, I want to move on to a point that, quite honestly, Mr. Frazier has not argued notably in this case but was granted a certificate of appealability, and I just want to briefly mention the lethal injection claim. First of all, in Mr. Frazier's case, he asked for and received a COA on the lethal injection claim and asked for remand for factual development. However, when he had the opportunity for factual development at the district court level, he failed to do so. He could have asked. We, of course, would have opposed, but he could have asked, and he didn't. And then he gets up to this court, and he asks this court to remand it for factual development. That's problematic for a couple of reasons. One, it is a general attack on lethal injection, and therefore fact-finding in this case would not be needed. He's raising an attack that lethal injection can never be done in Ohio, and so therefore discovery on what protocol, what procedure, what drugs we're using would not apply. What is the status, in your view, of the challenges to lethal injection in Ohio currently? In other words, is there something that he would potentially be affected by in terms of either the ‑‑ I understand that Judge Katz has some cases, and I think Judge Frost used to have some cases, and maybe there are some others. If you could give a brief explanation. Yes, Your Honor. After the Adams case, there's been quite a lot of confusion down at the district court level as to where these claims actually belong and which claims belong where. There are inmates who are coming in and amending their petitions. We're now on some of them on the second and third amendments of petitions to raise lethal injection claims. We've got a few that are trying to, now that the drug has changed, come in and amend it again. I understand that there's a lot of procedural morass here, but is there any case that is actually successfully challenging the current lethal injection method, or is that not even in litigation at this moment? Successfully? Well, at one point the cases were successful in front of Judge Frost. Your Honor, in front of Judge Frost, the case has not been determined yet. I believe it's going on eight or nine years now that it has been going on. I couldn't even tell you what level complaint we're on. Part of this is because the state has been constantly changing the method. But, Your Honor, the case in front of Frost is not a habeas case. The case in front of Frost is a 1983 civil action, and in 1983 it is a different claim. It is a claim that the protocol itself is bad and can be repaired. However, in habeas, to attack the validity of the sentence, it has to be a general attack that it can never be done in Ohio. And that's where the confusion is, because the inmates are coming in, and Mr. Fraser is not of that class, but most inmates are coming in, and we're almost word-for-word the 1983 case. But then when we had an oral argument... Why would inmates bring these up in habeas? It seems really dangerous, because if you get a state court ruling on it, then you have ed for deference. Well, and, Your Honor, that brings us to Fraser, because that's exactly what happened in Fraser. And in Fraser, he raised this... But why, again, I still don't understand. Why are they doing this? You're just confirming the problem. But why would they do this, as opposed to join the 1983 cases? Is it because you're not eligible to join the 1983 case until First Fertile Habeas is done? No, Your Honor, because most of the inmates that are adding this to their habeas claim are already inmates that are in the 1983 case. They're trying to have the case going in both courts. And for whatever reason... You don't like having lots of claims to defend. Have you raised this question with them? Because I just don't understand the benefit they're getting. Your Honor, the benefit they're getting is delay. They are confusing the lower courts so immensely and asking for discovery, and because everybody is waiting to kind of see what happens with the lethal injection 1983 case, they get delay. Wasn't part of the problem that this court said that they couldn't use 1983? And that there was... No, Your Honor... Am I remembering that correctly? No. And that the Supreme Court eventually allowed 1983 to be used? No? No, Your Honor. I believe what caused this procedural nightmare is the Adams case said that it was a case that we had appealed the denial of our motion to dismiss the lethal injection claim. We claimed that it was not appropriate in habeas because the case that said it should be in 1983. This court said that the state's position went too far, that we were claiming that these claims never belonged in 1983. It didn't... I'm sorry, in habeas. Our argument in Adams was that it doesn't belong in habeas. It only belongs in 1983. This court said there are times that it could be raised in habeas, and that's where this court stopped. It did not say, and it did not define, which claims go where. Suppose that we were to affirm on the mental retardation issues and so forth, and suppose the Supreme Court were to deny cert. Would Frazier then have an opportunity to challenge whatever the lethal injection method is at that point in time? Your Honor, he already is. He is in the 1983 litigation in front of Judge Frost. He already is doing that. He's a member of the class? Yes, Your Honor, he is. Am I right to use the word class? I don't think it's actually been certified as a class, a typical class action. He is one of the, I believe it's 86 inmates, that have joined the omnibus complaint. What's happening? I looked at an order that was filed in the case before Judge Frost just within the last couple of weeks, and see if you think this is an accurate description. That case obviously at this point had a protracted history, but it looks like what Judge Frost has done is looked at the actual procedures for carrying out the lethal injections at various points in time, and various inmates have been, plaintiffs in that case, have been moving for stays of execution at the point when their habeas petitions had been finally resolved. Some of those Judge Frost has granted along the way. Some of the petitioners have been executed without requesting a stay in that litigation, and most recently appears that those have mostly been denied because Judge Frost appears to have become much more satisfied with what the state of Ohio is doing, but he's in each one been looking at the procedures at the particular point in time at which all of the habeas relief possible is over. Is that right? Your Honor, that is not when he is looking at each case. I thought that was the point at which they were moving for stays of execution. No, they're moving for stays of execution in the weeks before their execution. That's what I mean. It's not because their habeas is done that they are now doing this. I understand that, but it just happens to be at a time when that's over because that's when their execution date gets set and they believe that the execution will in fact come about. Your Honor, that is when they're moving for their motion to stay and the temporary restraining order is just in the weeks or months before the execution. They have already been members of the class for the most part and have been involved in this litigation under the 1983. The showing that Judge Frost is looking at is what is the showing that they can make as of that particular point in time. Yes, Your Honor, because it is the 1983 which is focused on what the protocol is. That's a 14th Amendment claim at this point, right? Your Honor, I believe that that is, although there have been some inmates that are still seeking the 8th Amendment, but we believe that it is not meritorious on either. Is the state claiming in those cases that this is too late to be bringing the 1983 argument about the then current method of lethal injection? I don't believe that that is the state's position in the 1983 case, Your Honor. So you wouldn't say, if we were to say this is not the right time, you wouldn't say that later on is too late? Your Honor, in this case, he's already in. There is no too late. He's there already in 1983. So he doesn't have to come in the month before his execution and join the litigation. He's there. He's already a part of this case. However, in this case, he asked for review at the time of trial. He actually asked for review at the Ohio Supreme Court. He asked for review in post-conviction. In this case, there was review. The review would be of what? Of the method of lethal injection at the time that it was being considered? No. Because how could the Ohio Supreme Court five years ago, hypothetically, know what the method of lethal injection is going to be five years from now? Your Honor, it was not an objection to the protocol of lethal injection. The mechanism of lethal injection has not changed. We still find a vein, we still insert a needle into the vein, and we still inject poisonous chemicals in a dose. Obviously, if you inject some chemicals, you can have a very painful death. If you inject other chemicals, you can have a very swift and perhaps painless death. Your Honor, again, that specific argument belongs in 1983. But was he arguing here just lethal injection by itself violates the Constitution? Without regard to what chemicals are used? Yes, Your Honor. That is exactly what his claim in state court was. That is what we believe is the claim that belongs in habeas, that it is a general attack that lethal injection, period, cannot be done constitutionally. The United States Supreme Court has said in the Bays case that lethal injection is constitutional. The Kentucky case where the three-drug protocol was allowed. Yes, but you shouldn't say three-drug protocol because that gets you into variations. You're saying the only thing that matters is death by lethal injection. That's correct, Your Honor. I was just mentioning what the procedure was at the Supreme Court, not that they looked at it under that protocol. I was just trying to say what the claim was. The fact that it was a three-drug protocol there is of no importance. The claim was whether the lethal injection, period, was constitutional. And if there are no further questions, I see my time has expired. Thank you. Thank you very much. Judge, I can answer your why are people raising it in habeas. In a case, Michael Dean Scott, Judge Adams, remanded a question to the Ohio Supreme Court, which was can you raise this lethal injection question? Is there any state court in Ohio that you can even raise it? In State v. Scott, the Supreme Court of Ohio said no. The legislature gave no basis for doing that so that we can't answer it. We can't address it. It's not in five different forums people tried to raise that issue, and they basically said there's no place to challenge it. So, frankly, there is no deference because the Supreme Court has said we can't even answer that question. We aren't able to do that. The Ohio Supreme Court thinks it's not allowed to decide whether death by lethal injection is constitutional? To address the protocol issues, the changing of protocol, there's no basis in the forum. But the protocol is in the 1983 Judge Frost litigation. It's there. Okay, so here's what I don't understand. If the protocol claims are there, why would it help capital defendants to challenge protocol elsewhere? They're no longer there. I mean, they actually were never there, I guess the best way to say it. People raised them every place they could because it wasn't clear under Ohio law how and where you could raise such a thing. Let me be more concrete. Apparently, your client is in the Frost case. That's correct. Why do you care? What exactly do you care about the claim you've raised in this case? I'm trying to understand. Well, the answer is that no one knows where Judge Frost is going to go. No one knows whether i.e., you might not win. Exactly. Okay, but I mean, we review that. It comes to the Sixth Circuit anyway, so why wouldn't we do it that route? Because at this point in time And it doesn't get epidepherence, which is good for your client. Well, there is no epidepherence at all. Okay, forget that for a second. You get one shot is the point. Why wouldn't you get it through the 1983 case? Because at the time when you're raising these in petition, I understand this petition was filed some time ago. Nobody knew what the best way to do it. Nobody knew Now we know. Now we know. No, I understand. What today is the interest in our reviewing it. Well, I guess the interest is whether this court wants to be proactive or make it part of Judge Katz's litigation or whether this court wants to rely on what Judge Frost is doing. Could you help me out? I can't tell from your brief talks about this in very, very cursory fashion. And it was almost impossible for me at least to tell what your claim is. Can you just summarize for us what your claim is today with respect to the lethal injection procedures? Yes. And it was, you know, we didn't know how to address it. And the reason is because What would you tell us it is today? Well, it changed, I think, 10 days ago. You know, so that's the issue is what we're basically You have an 8th Amendment claim in this case. Right. Judge Frost is talking about a 4th Amendment claim. That's correct. Which is not the claim before us. That's correct. Judge Frost is talking about differences in the way in which the lethal injection procedure is carried out that vary from case to case. He's been concerned about that, right? That's not before us. My understanding is that Judge Katz is obtaining discovery from Judge Frost's case. So the two are intermixed at this point in time. Well, Judge Katz's case is concluded. No, not that, not all of them. The Adams case is back with our court. Okay. Right. I mean, I'll take your word for that. I think it is. I'm standing here. Is Adams the name of the party or the judge? Yes. Yeah, it was the party. Adams, in this case, is the name of the party. Okay. Do you have a specific lethal injection claim, I think, is the import of Judge Gibbons' question, which would be nice to know? Okay, candidly, no. Because, you know, the basis was that, look, if we can get this court to look at it and send it back and try to figure out this issue, that would be great. Delay is always good, too, in these sorts of cases. It is. So, I mean, candidly. Look at it a little longer. Because it changes. Exactly. But if I get a few seconds left, if I could, I want to address the Hall issue and why Hall is pertinent here. One of the reasons, again, that the Ohio Supreme Court said, we reject the five-point downward adjustment. And so the court didn't understand what it was doing. It's not a downward adjustment. The SEM, it could go either way. It's not an adjustment. That's why I mentioned the guidelines. Maybe they were rejecting the idea that it's only one way. I don't know that answer. But what they did say, they based it on Dr. Forzak's. He said he was 95% sure and, therefore, we don't need to. But that's the problem. The 95, it can't go more than a 95 because that includes the 5%. That includes the SEM. It can never be more because there's this inherent uncertainty in the accuracy of entering. And this was the Waste 3. That's why presumptions are important. Exactly. And they did not consider those factors in the record, which I reviewed, which overcome the presumption. But that's not a Hall claim. Hall is saying don't look at those factors. You're saying they looked at them, but they misapplied them. No. No, what I'm saying is they clearly said at 72, that's enough. And then they did an alternative. And even if it were, there's not enough adaptives. That's the problem. They do the alternatives both ways. And that's what happened here. Thank you very much. Thank you. And I understand that you were appointed pursuant to the Criminal Justice Act. We want to thank you for your representation of your client and public interest. Thank you very much.